25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John T. GALLUP, Defendant-Appellant.
 No. 93-3334.
 United States Court of Appeals, Tenth Circuit.
 June 9, 1994.
 
 ORDER AND JUDGMENT[1]
 Before BALDOCK, MCWILLIAMS and BRORBY, Circuit Judges.[2]
 
 
 1
 Defendant John T. Gallup, who pleaded guilty to possession with intent to distribute Lysergic Acid Diethylamide (LSD), 21 U.S.C. 841(a), appeals his sentence. We have jurisdiction pursuant to 18 U.S.C. 3742.
 
 
 2
 On November 18, 1991, Robert Kistler met with an undercover officer, Detective Sergeant Listrom. Prior to the meeting, Kistler had informed Listrom, through a contact named Danny Ferrin, that he (Kistler) wished to trade 1,000 units of LSD for Listrom's marijuana, believing he could sell the marijuana for more money than the LSD. Kistler met with Listrom at 7:45 p.m., but did not have the LSD with him. When Listrom denied Kistler's request to test the marijuana before the LSD was produced, Kistler left to retrieve the LSD. Fifteen minutes later, Kistler again met with Listrom and produced the LSD but informed Listrom that he had only 700 units to trade. Listrom allowed Kistler to smoke a sample of the marijuana, after which Kistler complained that the marijuana was of poor quality. Listrom offered to trade a one-pound bag of marijuana for the 700 units of LSD, but Kistler informed Listrom that he needed to consult with someone before the deal could be finalized. Listrom then offered to exchange one-and-a-quarter pounds of marijuana for the LSD, but Kistler again informed Listrom that he needed to consult someone else, a consultation which would take only thirty to forty-five minutes. Listrom suggested that Kistler take the one-and-a-quarter pounds of marijuana and Listrom keep the LSD, and if Kistler's people were not satisfied with the marijuana, Listrom would return the LSD. Kistler agreed to this arrangement and left.
 
 
 3
 Topeka police officers then attempted to arrest Kistler, who escaped in the car he had driven to meet Listrom. The car was registered to Jerry Kingsley, who was subsequently determined to be the father of Kistler's girlfriend, Jennifer Kingsley. Officers then learned that Kistler had dropped Ms. Kingsley and Defendant at a Topeka mall prior to Kistler's meeting with Listrom.
 
 
 4
 When interviewed, Ms. Kingsley advised Detective Listrom that Kistler had been asked by an individual named Douglas Telman to locate someone who wanted to trade marijuana for LSD. According to Ms. Kingsley, Defendant and Telman had obtained the LSD from a New Jersey source, who had sent the LSD to Telman by mail. Kingsley also stated that earlier in the day on November 18, 1991, prior to the Kistler-Listrom meeting, she had been present when Telman and Defendant brought the LSD to Kistler in Lawrence, Kansas. At that time, Kistler placed the LSD in a white envelope, and later that afternoon, Kistler, Kingsley and Defendant departed for Topeka. Kingsley stated that while en route to Topeka, Defendant had told Kistler to bring Defendant a sample of the marijuana before finalizing the transaction.
 
 
 5
 Defendant was apprehended at the mall in Topeka where Kistler had left him. At that time, Defendant told officers that he was not aware of any LSD or any other involvement Kistler might have in the sale of LSD. Defendant stated that he was going to Topeka with Telman to look at some marijuana Telman was buying, but denied knowing Kistler possessed LSD which he intended to use to purchase the marijuana. However, Defendant acknowledged that he had seen the LSD when Telman sold the LSD to Kistler.
 
 
 6
 Defendant pleaded guilty to possession with intent to distribute LSD, which carries a mandatory minimum prison sentence of five years, i.e., sixty months. See 21 U.S.C. 841(b)(1)(B). With an offense level of fifteen and a criminal history category of three, Defendant's guideline range was twenty-four to thirty months. After granting the government's motion for downward departure due to Defendant's substantial assistance, see U.S.S.G. 5K1.1, the court departed from the statutory mandatory minimum and sentenced Defendant to thirty months imprisonment.
 
 
 7
 Defendant argued below that the district court should depart downward from Defendant's offense level by two points for Defendant's minor role in the offense pursuant to U.S.S.G. 3B1.2(b). The district court denied this request, stating:
 
 
 8
 I believe that each of the defendants played a different role, but they played a role that was equally important to the completion of the transaction ... [I]t is my conclusion that each of the defendants played a significant, important role in the conclusion of the transaction without which it could not have been concluded....
 
 
 9
 Defendant argues on appeal that this finding was error. We apply the clearly erroneous standard. See United States v. Ballard, 16 F.3d 1110, 1114 (10th Cir.1994) (clear error is standard of review for U.S.S.G. 3B1.2 determinations). In applying the clearly erroneous standard, we will not reverse the district court unless the court's finding was without factual support in the record or if after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been made. United States v. Beaulieu, 893 F.2d 1177, 1182 (10th Cir.), cert. denied, 110 S.Ct. 3302 (1990).
 
 
 10
 U.S.S.G. 3B1.2 provides for a two-point downward adjustment of the base offense level for a defendant who was "a minor participant in any criminal activity." See U.S.S.G. 3B1.2(b). A "minor participant" is described as "one who is less culpable than most other participants, but whose role could not be described as minimal." Id., comment. 3. Defendant had the burden at sentencing of establishing by a preponderance of the evidence that he was a minor participant. United States v. Occhipinti, 998 F.2d 791, 802 (10th Cir.1993).
 
 
 11
 After reviewing the facts the district court had before it, we cannot find the court's denial of a 3B1.2(b) departure clearly erroneous. The district court had before it evidence from which it could find that Defendant was equally as culpable as Telman and Kistler. In fact, Ms. Kingsley's statement reflected that Defendant and Telman were Kistler's superiors in the drug buy. An inference that Defendant was one of Kistler's superiors is further supported by Kistler's statements to Listrom that he required the approval of someone who was nearby. From this statement, the court could easily have inferred that the "someone" to whom Kistler referred was Defendant, who had been dropped at a nearby mall by Kistler. Thus, merely because Defendant was not present during the buy does not make him a minor participant, especially considering that the court had facts before it from which it could conclude that Defendant's testing and approval of the marijuana were prerequisites to purchase finalization.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Neither party has requested oral argument. The case is therefore submitted on the briefs